SMITH, Appellant, v. SMITH, Respondent.

*No. 127. Argued September 7, 1971.—Decided October 5, 1971.*
(Also reported in 190 N. W. 2d 174.)

The cause was submitted for the appellant on the brief of *David J. Becker* of Milwaukee; a brief amicus curiae in opposition was filed by *Joseph M. Syman,* family court commissioner of Milwaukee county, and *William H. Evans,* assistant family court commissioner.

BEILFUSS, J. The parties, assuming the family court commissioner to be a party, have presented two issues: (1) Was the second marriage, the plaintiff's marriage to Smith, void or voidable? (2) Was the action for annulment barred by virtue of sec. 247.03 (2), Stats., because not brought while the first husband, Haralson, was still living?

We believe the first issue is controlling and therefore do not propose to decide the effect of sec. 247.03 (2), Stats., upon these facts.

The appellant contends that because she had another husband living at the time of her marriage to Smith, the Smith marriage was void and that the only way the impediment could be removed was provided in sec. 245.24, Stats., of the marriage chapter. The section provides:

"**Removal of impediments to subsequent marriage.** If a person during the lifetime of a husband or wife with whom the marriage is in force, enters into a subsequent

marriage contract in accordance with s. 245.16, and the parties thereto live together thereafter as husband and wife, and such subsequent marriage contract was entered into by one of the parties in good faith, in the full belief that the former husband or wife was dead, or that the former marriage had been annulled, or dissolved by a divorce, or without knowledge of such former marriage, they shall, after the impediment to their marriage has been removed by the death or divorce of the other party to such former marriage, if they continue to live together as husband and wife in good faith on the part of one of them, be held to have been legally married from and after the removal of such impediment and the issue of such subsequent marriage shall be considered as the legitimate issue of both parents."

There are two conditions that must be fulfilled in order to have the impediment to the subsequent marriage removed under this section.

(1) The second marriage must have been entered into by one of the parties in good faith, believing that (a) the former husband or wife was dead, (b) the former marriage had been annulled or been dissolved by a divorce decree, or (c) without knowledge of the prior marriage.

In this case, although there is no finding, there is some evidence that respondent knew of the first marriage. Smith's knowledge of the prior marriage would mean that the first condition of sec. 245.24, Stats., is not fulfilled.

The second condition is that the husband and wife must have lived together after the removal of the impediment.

There was a specific finding by the court that the Smiths had not lived together as man and wife since June 23, 1968, the date of Haralson's death. Mrs. Smith testified that they had not lived together since 1966. The conditions of sec. 245.24, Stats., have not been fulfilled and therefore the Smith marriage is not validated under this statute.

The appellant wife contends that secs. 245.002 (3), 245.03 (1) and 245.21, Stats., when read together, necessitate the conclusion that the Smith marriage was null and void, and consequently the Smith marriage was not ratified, validated or legalized by the death of L. H. Haralson. The pertinent parts of the statutes are:

"245.002 **Definitions.** . . . (3) In this title 'void' means null and void and not voidable."

"245.03 **Who shall not marry; divorced persons.** (1) No marriage shall be contracted while either of the parties has a husband or wife living, . . ."

"245.21 **Unlawful marriages void; validation.** All marriages hereafter contracted in violation of ss. 245.02, 245.03, 245.04 and 245.16 shall be void (Except as provided in ss. 245.22 and 245.23). . . ."

At common law, a marriage entered into when one of the parties had a living, undivorced spouse was void and subject to direct or collateral attack before or after the death of the parties. *Lyannes v. Lyannes* (1920), 171 Wis. 381, 177 N. W. 683.

This court relaxed the stringent rule of the common law by ruling in some cases that void meant voidable. This interpretation allowed the Wisconsin courts to use some discretion in granting or refusing to grant annulment decrees.

In *Estate of Jansa* (1919), 169 Wis. 220, 221, 171 N. W. 947, this court construed statutory language which stated: " 'If any person . . . contract a marriage prohibited and declared void by the laws of this state, such marriage shall be null and void for all purposes . . . .' " *Jansa* involved two statutes which, when read together, provided that if an epileptic married, such marriage was null and void. This court held that the marriage of Jansa, who was an epileptic, to his wife was voidable, not void, and declined to nullify the marriage.

In *Hoffman v. Hoffman* (1943), 242 Wis. 83, 7 N. W. 2d 428, plaintiff attempted to evade the one-year waiting period for remarriage after her divorce by marrying defendant in Illinois. This court held that since defendant fully believed that the divorce was final, he would not be granted an annulment because of the validation statute (sec. 245.35, now sec. 245.24). The final decree of divorce in plaintiff's first marriage removed the impediment to the validity of the second marriage. Since the court was faced with a statute that defined plaintiff's second marriage as "null and void," the holding means that the court regarded the second marriage as voidable and the granting of an annulment subject to the court's discretion.

Likewise, in *Hutschenreuter v. Hutschenreuter* (1964), 23 Wis. 2d 318, 127 N. W. 2d 47, on facts similar to those in *Hoffman, supra,* we specifically reaffirmed the *Hoffman* holding. In both *Hoffman* and *Hutschenreuter,* one of the parties entered into the marriage in good faith, without knowledge of the impediment. In the instant case the evidence shows that Mr. Smith may have known of the impediment to his marriage with Mrs. Smith. However, the significant holding of *Hoffman* and *Hutschenreuter* is that this court concluded that a seemingly null and void marriage meant voidable in situations where the impediment to the second marriage was removed.

In *Davidson v. Davidson* (1967), 35 Wis. 2d 401, 151 N. W. 2d 53, this court held that the death of plaintiff, who had entered into a bigamous marriage in good faith, abated the cause of action in an annulment action initiated by plaintiff. The result was reached because the court felt that sec. 245.24, Stats., made voidable a marriage that secs. 245.002 (3), 245.21 and 245.03 (1) had made void. In *Davidson* (p. 407), we cited from 35 Am. Jur., *Marriage,* p. 212, sec. 46, as follows:

" 'A definition of voidable and void marriage which will closely fit modern conditions is that a marriage may be considered voidable although prohibited by law when it is possible, under any circumstances, for the parties to contract the marriage, or subsequently to ratify it, while it should be considered void if it is impossible for them under the law to contract it, and if it is impossible for them subsequently by any conduct to ratify it, and if the statute expressly declares that the marriage is void.' "

*Davidson, supra,* is important here for two reasons:

(1) A marriage made void under secs. 245.002 (3), 245.03 (1) and 245.21, Stats., is not void but voidable in certain situations when an impediment to the marriage is removed.

(2) It is in the public interest to maintain a marriage relationship. (Sec. 245.001 (2), Stats.)

In this case the Smiths did not live together after June 23, 1968. This fact distinguishes it from *Hoffman* and *Davidson,* where the parties lived together after the removal of the impediment.

This plaintiff-appellant knew of the impediment to her marriage to Smith. Does the equitable doctrine of "clean hands" prevent her from obtaining affirmative relief because of her own bad faith? Ordinarily, equitable doctrines are not available to supersede statutory mandates.

In *Davidson, supra,* we set forth at page 410:

"In 3 Nelson, Divorce and Annulment (2d ed.), p. 295, sec. 31.17, it is stated:

" 'Nor will a suit on this ground be dismissed under the doctrine of clean hands, since that doctrine may not be invoked in contravention of the public policy of the state as expressed in the statute.'

"The public policy of the state is set forth in sec. 245.001 (2), Stats., in part, as follows:

" 'INTENT. It is the intent of chs. 245 and 248 to promote the stability and best interests of marriage and the family. . . . The consequences of the marriage contract

are more significant to society than those of other contracts, and the public interest must be taken into account always. . . . The impairment or dissolution of the marriage relation generally results in injury to the public wholly apart from the effect upon the parties immediately concerned.' "

In this instance the equitable doctrine of "clean hands" in no way offends against the statutory public policy of the state, in fact it complements it.

We therefore conclude, under the facts of this case, that plaintiff-appellant's marriage to Smith was voidable and not void and that the impediment to the marriage was removed when the first husband, Haralson, died. The voidable marriage then became a valid marriage. The complaint praying for an annulment was properly dismissed.

*By the Court.*—Judgment affirmed.