NORTH CENTRAL DAIRYMEN'S COOPERATIVE, and another, Plaintiffs-Respondents, v. TEMKIN, and another, Defendants-Respondents: NATIONAL FARMERS ORGANIZATION, and another, Defendants-Appellants.

Supreme Court

*No. 76–277. Submitted on briefs November 1, 1978.—*
*Decided November 28, 1978.*
(Also reported in 271 N.W.2d 890.)

For the appellants the cause was submitted on the briefs of *Victor M. Harding* and *Whyte & Hirschboeck, S. C.,* of Milwaukee.

For the respondents the cause was submitted on the joint brief of *Sidney Harris, J. T. Westermeier, Jr.,* and *Arent, Fox, Kintner, Plotkin & Kahn* of Washington, D. C., and *George M. St. Peter* and *St. Peter Law Offices* of Fond du Lac.

COFFEY, J. The plaintiff, North Central Dairymen's Cooperative (hereinafter NCDC), is a Wisconsin cooperative whose members are dairy farmers. Plaintiff, RMD, Inc., is a Wisconsin corporation formed to lease and manage a milk receiving facility in Hartford, Wisconsin. The defendants, Sylvia and Jachial L. Temkin

(hereinafter Temkins) were the owners and lessors of the facility during the applicable period. Defendant, National Farmers Organization (hereinafter NFO), is a nonprofit Iowa corporation with farm membership throughout the United States, including Wisconsin, and is engaged in the marketing of milk and other products. Defendant, Steve Pavich, is one of the NFO's designated representatives in Wisconsin.

Plaintiffs commenced this action May 4, 1976 and later amended their complaint asserting four claims against the defendants for their alleged concerted and individual acts:

1. Breach of the indenture agreement between the Temkins and RMD;

2. Tortious interference with contract rights by NFO;

3. Interference with cooperative marketing agreements by NFO and the Temkins; and

4. Unlawful conspiracy in restraint of trade in violation of sec. 133.01(1), Stats.

Commencing August 29, 1969, the Temkins leased the Hartford facility to RMD for a term of one year. RMD sublet the facility to NCDC, with RMD agreeing to continue to manage the facility for a stated fee. On June 25, 1970, RMD invoked its right to exercise the option to purchase the facility recited in the indenture agreement. However, the Temkins claimed RMD had substantially breached its agreement by removing tools and equipment from the premises, by damaging and failing to maintain leased equipment and property, and by failing to make the last rental payment of $2,500. A letter of July 8, 1970, from RMD's attorney to counsel for the Temkins indicates that RMD was unaware of any default as to the lease and plaintiffs dispute that there was any substantial breach of the indenture agreement. Consequently, Temkins refused to honor the option and subsequently leased the facility to Allen D. Schroch and

Henry Oschsner for a term of five years. NFO guaranteed payment of rent by the new lessees.

Plaintiffs allege that NFO induced the Temkins to breach the indenture agreement by offering to lease the property on terms more favorable to the Temkins than the term of RMD's indenture. During 1970, NFO entered into direct competition with NCDC for the milk production of dairy farmers and the sale of raw milk and by September 14, 1970 NFO had acquired 233 of the NCDC producers which had been marketing through the Hartford facility. Many of these members breached or repudiated their contracts with NCDC in order that the NFO could serve as their marketing agent. The loss of the Hartford facility made it necessary for RMD to construct another intake facility in Slinger, Wisconsin to accommodate its producers. Further, the loss of the 233 co-op members adversely affected the price paid throughout NCDC's marketing unit. As a result, NCDC terminated its business arrangement with RMD in June, 1971.

Pursuant to the contract, the plaintiffs seek compensatory damages for the loss of rent which they allege was agreed to be applied to the purchase price of the facilities. Also, monies received by the Temkins as a result of their retention of the property, market appreciation, leasehold improvements made by plaintiffs, lost profits, capital investment losses and cost of construction of the Slinger facility, necessitated by the loss of the Hartford facility, were claimed as a basis for compensatory damages.

In May, 1972, NCDC and RMD intervened in an action pending in United States District Court for the Western District of Missouri entitled *Alexander v. NFO, et al.,* Civil Action No. 19191–1. The complaint in that action makes the following three allegations. They allege: (1) conspiracy to restrain trade in violation of the Sherman

Anti-Trust Act, 15 U.S.C., §1; (2) attempt to monopolize contrary to the Sherman Act, §2; and (3) violations of the Agricultural Fair Practices Act of 1967, 7 U.S.C., §2303(c) (e) and (h) (1970). After July, 1975 NFO was granted a severance of plaintiff intervenors' cause and no trial date has been set to date. The reason given for the severance is that NFO did not have an adequate opportunity to discover the issues raised in the plaintiffs' suit. The federal action serves as the basis for defendants' motion for dismissal under sec. 802.06(2) (j), Stats., or, in the alternative, stay of the Wisconsin circuit court suit, pursuant to sec. 801.63, pending the decision in the Missouri District Court.

The trial court denied the motion and denied stay of the proceedings, finding that the parties in the two actions are: (1) not the same, and (2) ruled that the causes of action in the instant case are peculiarly state claims and different from the claims asserted in the Missouri federal court action.

There is a single issue on appeal:

Whether the trial court abused its discretion in denying the NFO's motion pursuant to sec. 801.63, Stats., to stay state court proceedings as a matter of substantial justice to permit trial in a foreign forum?

■

The respondents contend that an order denying a stay of proceedings is not appealable. An order on a motion to stay proceedings is expressly made appealable by sec. 801.63(2), Stats.,[1] despite the majority rule which recites that an order based upon a motion to stay is not appealable since it does not prevent the entry of a judgment from which appeal may be taken.[2]

---

[1] *See:* Cases decided under Rules of Civil Procedure, sec. 262.19; *Littmann v. Littmann,* 57 Wis.2d 238, 203 N.W.2d 901 (1973); *Campfire Land Co. v. Jolin,* 55 Wis.2d 229, 198 N.W.2d 593 (1972).

[2] Anno. "Stay Order—Appealability," 18 A.L.R.3d 400, §3[2] at 402.

The principal reason for the exercise of the power to stay proceedings appears to be the protection of litigant from multiplicity of actions where there is no legitimate advantage to the opposing party. Anno. "Stay-Action in Other State," 19 A.L.R.2d 301. "Courts already heavily burdened with litigation with which they must of necessity deal should therefore not be called upon to duplicate each other's work in cases involving the same issues and the same parties." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941). In *Syver v. Hahn*, 6 Wis.2d 154, 159–60, 94 N.W.2d 161 (1959), this court addressed the same concern and stated:

"Where two actions between the same parties, on the same subject, and to test the same rights, are brought in different courts having concurrent jurisdiction, the court which first acquires jurisdiction, its power being adequate to the administration of complete justice, retains its jurisdiction and may dispose of the whole controversy, and no court of coordinate power is at liberty to interfere with its action. This rule rests on comity and the necessity of avoiding conflict in the execution of judgments by independent courts, and is a necessary one because any other rule would unavoidably lead to perpetual collision and be productive of most calamitous results."[3]

Therefore, in the case at bar, the primary concern is whether the state and the federal actions are substantially identical as being two separate actions involving the same parties and adjudicating the same legal principles. *Lorenz v. Dreske*, 62 Wis.2d 273, 294, 214 N.W. 2d 753 (1973). The case law in *In re Petition of Phelan*, 225 Wis. 314, 277 N.W. 411 (1937) is representative of the legal principles to be applied. In that case, the court stated that where an action was begun in federal court, prior to a state suit, which includes the same parties and

---

[3] *See* 21 C.J.S., *Courts*, §492 at 745 supporting the general proposition that a stay of proceedings is granted upon the concepts of comity and judicial policy against multiplicity of actions.

the same issues, the state action is subject to a stay of proceedings. Conversely, the state proceedings may continue where it is shown that the state action is reasonably necessary for the protection of a litigant's substantial rights which are not at issue in the federal action.

Consistent with the trial court's findings, we hold the appellants' contention that the federal and state actions involve the same parties and issues and that the federal court is empowered to grant complete relief is without merit. We are mindful of the standard of review that a trial court's discretionary order based upon its findings of fact will be affirmed if there is any reasonable basis for the trial court's decision. *Quick v. American Legion 1960 Convention Corp.*, 36 Wis.2d 130, 135, 152 N.W.2d 919 (1967).

The Temkins, named as party defendants in the Wisconsin suit alleging breach of contract, have not been named as parties in the federal court action, and thus no federal court jurisdiction over them has been asserted. Thus, the legal test supporting a stay of proceedings as to identical parties has not been satisfied.

Additionally, the Wisconsin action raises issues peculiarly of state character. The federal court's decision on the allegations of the Sherman antitrust violations and breach of the federal Agricultural Fair Practices Act do not reach the state claims involving: (1) breach of the indenture agreement; (2) tortious interference of contract; (3) violation of sec. 185.43, Stats., relief against breach or threatened breach; and (4) a sec. 133.-01, Stats., infraction, unlawful contracts; conspiracies. Therefore, the federal forum cannot dispose of the entire controversy.

Accordingly, we hold there was no abuse of the discretion in the trial court's denial of a motion for stay of proceedings pursuant to sec. 801.63, Stats.

*By the Court.*—Order affirmed.