CORNING, Plaintiff-Respondent, v. CARRIERS INSURANCE Co., Defendant-Appellant: MOUNTFORD, and others, Defendants-Respondents.

Court of Appeals

*No. 78–249. Submitted on briefs December 18, 1978.—*
*Decided January 18, 1979.*
(Also reported in 276 N.W.2d 310.)

For the defendant-petitioner the cause was submitted on the briefs of *Axley, Brynelson, Herrick & Gehl,* with *James C. Herrick* and *Bruce A. Schultz* of counsel, of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Klein, Kuemmel & Schmidt, S. C.,* with *Joseph K. Kuemmel* and *Jerome S. Schmidt* of counsel, of Madison.

Before Gartzke, P.J., Bablitch, J., and Dykman, J.

DYKMAN, J. Carriers Insurance Co. appeals an order denying its motion for summary judgment in a wrongful death action brought by Colleen Corning.[1] Carriers moved for summary judgment on grounds that Colleen Corning was not the spouse of James Corning and therefore could not maintain a wrongful death ac-

---

[1] Section 895.04(2), Stats., provides that the claim in wrongful death belongs to a surviving spouse if one exists, and, if not, then to the decedent's lineal heirs. Section 895.04(1) and (2) reads:

(1) An action for wrongful death may be brought by the personal representative of the deceased person or by the person to whom the amount recovered belongs.

(2) If the deceased leaves surviving a spouse, and minor children under 18 years of age with whose support the deceased was legally charged, the court before whom the action is pending, or if no action is pending, any court of record, in recognition of the duty and responsibility of a parent to support minor children, shall determine the amount, if any, to be set aside for the protection of such children after considering the age of such children, shall determine the amount, if any, to be set aside for surviving spouse, and any other facts or information it may have or receive, and such amount may be impressed by creation of an appropriate lien in favor of such children or otherwise protected

tion. The only issue on appeal is whether Colleen Corning is James Corning's spouse within the meaning of the wrongful death statute.

James Corning and Colleen (Bessac) Corning were married in Illinois on November 1, 1968, six months and one day after Colleen was granted a divorce in Wisconsin from Vilo Bessac. The Bessac divorce was not final at that time because the one-year interlocutory period in effect then had not expired. Sec. 245.03, Stats. (1967). At the time of the marriage, James Corning was in arrears in support payments for five children from a previous marriage. Under Sec. 245.10, Stats., James Corning could not marry without the permission of a court.[2]

James Corning died on October 3, 1977, as the result of injuries suffered when a truck insured by Carriers collided with a truck operated by him. We are told that Colleen Corning and the children and dependents of the deceased, all of whom lived with Colleen and James,

---

as circumstances may warrant, but such amount shall not be in excess of 50% of the net amount received after deduction of costs of collection. If there are no such surviving minor children, the amount recovered shall belong and be paid to the spouse of the deceased; if no spouse survives, to the deceased's lineal heirs as determined by s. 852.01; if no lineal heirs survive, to the deceased's brothers and sisters. If any such relative dies before judgment in the action, the relative next in order shall be entitled to recover for the wrongful death. A surviving nonresident alien spouse and minor children shall be entitled to the benefits of this section. In cases subject to s. 102.29 this subsection shall apply only to the surviving spouse's interest in the amount recovered. If the amount allocated to any child under this subsection is less than $1,500, s. 807.10 may be applied. Every settlement in wrongful death cases in which the deceased leaves minor children under 18 years of age shall be void unless approved by a court of record authorized to act hereunder.

[2] This statute was held unconstitutional in *Zablocki v. Redhail*, 434 U.S. 374 (1978).

entered into a settlement agreement with Carriers under which Carriers agreed to pay Colleen Corning $200,000 damages for James Corning's death. The record does not contain a copy of the settlement agreement, but does contain the petition to the court for approval of the settlement and the court's approval of the settlement. The children and the dependents, through guardians ad litem as necessary, agreed to the settlement.

Carriers did not pay the $200,000, and Colleen Corning brought this wrongful death action. Carriers argues that the settlement was contingent on Colleen Corning being the spouse of James Corning, and defends in this suit on the ground that the marriage of Colleen and James Corning was void. Carriers moved for summary judgment on that basis. Colleen Corning also moved for summary judgment. Her motion is still pending before the trial court. The trial court, in denying Carrier's motion, held that Colleen Corning could maintain the suit as James Corning's spouse. An order denying a motion for summary judgment is not appealable as a matter of right, but may be appealed with permission from this court. Sec. 808.03(1) and (2), Stats. We granted Carriers' petition for leave to appeal a non-final order.

Colleen Corning argues that Carriers cannot challenge her status as "spouse" because under sec. 247.02(3), Stats., only a party to the marriage can assert its invalidity. Carriers submits that it is entitled to raise defenses to the wrongful death action and that one defense is that Colleen Corning was never James Corning's legal spouse.

Section 895.04(2), Stats., is applicable only to persons who have a certain status. A spouse is one of those entitled to maintain an action for wrongful death while

others are not. Were we to hold as Colleen Corning suggests, strangers would be able to maintain actions for the wrongful death of a person alleged as their "spouse," because the defendant would be unable to challenge their status. A wrongful death action is not an action to affirm or annul a marriage. We believe that Carriers does have the right to assert the defense that Colleen Corning is not the spouse of James Corning.

Carriers argues that the Corning marriage was void under secs. 245.03, 245.04, 245.10 and 245.21, Stats. and that the marriage was not validated under sec. 245.24, Stats:

If a person during the lifetime of a husband or wife with whom the marriage is in force, enters into a subsequent marriage contract in accordance with s. 245.16, and the parties thereto live together thereafter as husband and wife, and such subsequent marriage contract was entered into by one of the parties in good faith, in the full belief that the former husband or wife was dead, or that the former marriage had been annulled, or dissolved by divorce, or without knowledge of such former marriage, they shall, after the impediment to their marriage has been removed by the death or divorce of the other party to such former marriage, if they continue to live together as husband and wife in good faith on the part of one of them, be held to have been legally married from and after the removal of such impediment and the issue of such subsequent marriage shall be considered as a legitimate issue of both parents.

Carriers argues correctly that sec. 245.24, Stats., requires that: (1) the second marriage must have been entered into by one of the parties in good faith (a) believing the former husband or wife was dead, or (b) believing the former marriage annulled or dissolved by divorce decree, or (c) without knowledge of the prior marriage; and (2) the husband and wife must have lived together after the removal of the impediment.

Carriers contends that Colleen Corning or James Corning or both acted in bad faith so that the statute does not remove the impediment to their marriage.

Generally, state of mind should not be determined on a motion for summary judgment. *Lecus v. American Mut. Ins. Co. of Boston,* 81 Wis.2d 183, 190, 260 N.W.2d 241 (1977). That general rule is inapplicable here, though, because state of mind is irrelevant under the holding of *Smith v. Smith,* 52 Wis.2d 262, 190 N.W.2d 174 (1971).

In *Smith v. Smith,* plaintiff started an action for annulment on the grounds that her second marriage was void because her first marriage had never been terminated. The supreme court first found that the requirements of sec. 245.24, Stats., had not been met, so that the impediment to her second marriage had not been statutorily removed. However, the court held that the second marriage had been validated under the common law, that the second marriage was voidable not void, and that the impediment to the second marriage was removed when the first husband died. The court based this holding on several cases, including *Hoffman v. Hoffman,* 242 Wis. 83, 7 N.W.2d 428 (1943) and *Hutschenreuter v. Hutschenreuter,* 23 Wis.2d 318, 127 N.W.2d 47 (1964). The court said:

In both *Hoffman* and *Hutschenreuter,* one of the parties entered into the marriage in good faith, without knowledge of the impediment. In the instant case the evidence shows that Mr. Smith may have known of the impediment to his marriage with Mrs. Smith. However, the significant holding of *Hoffman* and *Hutschenreuter* is that this court concluded that a seemingly null and void marriage meant voidable in situations where the impediment to the second marriage was removed. 52 Wis.2d 262, 268.

The court then discussed a more recent case:

In *Davidson v. Davidson* (1967), 35 Wis.2d 401, 151 N.W.2d 53, this court held that the death of plaintiff, who had entered into a bigamous marriage in good faith, abated the cause of action in an annulment action initiated by plaintiff. The result was reached because the court felt that sec. 245.24, Stats., made voidable a marriage that secs. 245.002(3), 245.21 and 245.03(1) had made void. In *Davidson* (p. 407), we cited from 35 Am. Jur., *Marriage*, p. 212, sec. 46, as follows:

"A definition of voidable and void marriage which will closely fit modern conditions is that a marriage may be considered voidable although prohibited by law when it is possible, under any circumstances, for the parties to contract the marriage, or subsequently to ratify it, while it should be considered void if it is impossible for them under the law to contract it, and if it is impossible for them subsequently by any conduct to ratify it, and if the statute expressly declares that the marriage is void."

*Davidson, supra* is important here for two reasons: (1) A marriage made void under secs. 245.002(3), 245.03 (1) and 245.21, Stats., is not void but voidable in certain situations when an impediment to the marriage is removed. (2) It is in the public interest to maintain a marriage relationship. (Sec. 245.001(2), Stats.) 52 Wis. 2d 262, 268–69.

We recognize that *Smith* is an annulment case and this is a wrongful death case, but the reasoning upholding the validity of the marriage in *Smith* is equally applicable here. Certainly public policy favors upholding a marriage here attacked as void by a third party as surely as it favors upholding a marriage attacked, as in *Smith,* by a party to that marriage. Indeed, one of the early cases relied on as authority by the court in *Smith* is *Estate of Jansa,* 169 Wis. 220, 171 N.W. 947 (1919), which is not an annulment case.

*Smith v. Smith* compels the holding in this case. Colleen Corning's first marriage, the only legal impediment

to the Corning marriage, was in fact dissolved by a divorce judgment which became final six months after the Corning marriage. Colleen Corning is the surviving spouse of James Corning.

*By the Court.*—Order affirmed.