The First National Bank of Wisconsin Rapids, a national banking corporation, Plaintiff-Respondent,

v.

Carl W. Dickinson, Defendant-Appellant.
[Case No. 80–708.]

The First National Bank of Wisconsin Rapids, a national banking corporation, Plaintiff-Respondent,

v.

Orville T. Knutson and Marilyn J. Knutson, Defendants-Appellants.
[Case No. 80–709.]

The First National Bank of Wisconsin Rapids, a national banking corporation, Plaintiff-Respondent,

v.

Louis F. Larson and Margaret Larson, Defendants-Appellants.
[Case No. 80–710.]

Court of Appeals

*Nos. 80–708, 80–709, 80–710. Argued January 16, 1981.— Decided June 11, 1981.*
(Also reported in 308 N.W.2d 910.)

For the defendants-appellants there were briefs by *Alan H. Deutch* and *Lawrence Paul Kahn* and *Deutch & Hansher, S.C.,* of Milwaukee, and oral argument by *Alan H. Deutch.*

For the plaintiffs-respondents there was a brief by *Brazeau, Potter, Wefel & Nettesheim* of Wisconsin Rapids, and oral argument by *Nicholas J. Brazeau.*

Before Gartzke, P.J., Bablitch, J., and Dykman, J.

DYKMAN, J. These are real estate foreclosure actions. Appellants challenge the trial court's orders striking their defenses, dismissing their counterclaims, and granting summary judgment to respondent.

The First National Bank of Wisconsin Rapids (bank) commenced separate foreclosure actions against three defendants (buyers) in October, 1977. The complaints allege that buyers entered into contracts with N. E. Isaakson of Wisconsin, Inc. (seller) for the installment sale and purchase of real property. A copy of the relevant contract is attached to each complaint. The complaints further allege that seller gave buyers warranty deeds to the property and took back mortgages on the property securing the debts. The complaints allege that the contracts and mortgages were assigned to the bank, that buyers have failed to make the monthly payments re-

quired by the contracts, and that the bank declared the entire principal and interest due and payable as allowed by the contracts in the case of default. Various amounts are claimed to be due and owing to the bank by the three buyers as a result of their defaults. The complaints demand judgments of foreclosure and sale and, if required, deficiency judgments.

The seller's amended answers, identical in all material respects, allege general denials, affirmative defenses, and counterclaims. The bank moved to strike the affirmative defenses and to dismiss the counterclaims. Those motions were granted. With only the buyers' general denials remaining as defenses, the bank prevailed on its motions for summary judgment.

On appeal, buyers claim that the trial court erred in striking their affirmative defense and dismissing their counterclaims. Buyers also contend that the court erred in granting summary judgment. Because the issues and material facts are identical in each of the three cases, they have been consolidated on appeal.

### *Affirmative Defenses and Counterclaims*

#### *Standard of Review*

Rule 802.06(6), Stats., provides that "the court may order stricken from any pleading any insufficient defense . . . ." A motion to dismiss for failure to state a claim upon which relief can be granted is authorized by Rule 802.06(2)(f). The purpose of the two motions is to test the legal sufficiency of a defense or claim, respectively. 3 W. Harvey, *Rules of Civil Procedure* sec. 2101 at 164, sec. 2111 at 172–73 (West's Wis. Prac. Series 1975); *Morgan v. Pennsylvania General Ins. Co.*, 87 Wis.2d 723, 731, 275 N.W.2d 660, 664 (1979); *Wesolowski v. Erickson*, 5 Wis.2d 335, 342, 92 N.W.2d 898, 920–03 (1958).

Although the demurrer has been abolished as an instrument of Wisconsin civil procedure, Rule 802.01(3), Stats., motions to strike an answer and to dismiss a claim serve the function of the common law general demurrer. 3 W. Harvey, *supra*, sec. 2101 at 164; *Lumbermens Mut. Cas. Co. v. Royal Indem. Co.*, 10 Wis.2d 380, 382, 103 N.W.2d 69, 71 (1960). The motions admit the truth of all properly pleaded material facts and all reasonable inferences deriving from them, although "legal conclusions and unreasonable inferences need not be accepted." *Morgan*, 87 Wis.2d at 731, 275 N.W.2d at 664; *Sipple v. Zimmerman*, 39 Wis.2d 481, 489, 159 N.W. 2d 706, 709 (1968). The motions must fail if the facts alleged, if proven, would constitute a claim (in the case of a motion to dismiss) or a defense (in the case of a motion to strike) under any theory of law recognized in Wisconsin. *See Keller v. Welles Dept. Store of Racine*, 88 Wis.2d 24, 28–29, 276 N.W.2d 319, 321 (Ct. App. 1979).

The pleading challenged by a motion to dismiss or to strike should be liberally construed with a view to achieving substantial justice. *Halker v. Halker*, 92 Wis.2d 645, 650, 285 N.W.2d 745, 748 (1979); Rule 802.02(6), Stats. Accordingly, a claim should not be dismissed "unless it appears to a certainty that no relief can be granted under any set of facts that plaintiff can prove in support of his allegations." *Morgan*, 87 Wis.2d at 732, 275 N.W.2d at 664. A claim should therefore not be dismissed if it has any merit.[1] *Halker*, 92 Wis.2d at 650, 285 N.W.2d at 748. Similarly, a defense should not be striken unless the facts alleged in the answer could form no basis for any theory of defense under Wisconsin law.

---

[1] These rules are applied regardless of whether the claim is stated in a complaint or a counterclaim. *See Halker v. Halker*, 92 Wis.2d 645, 285 N.W.2d 745 (1979).

Whether the facts alleged in a pleading are legally sufficient to state a claim or defense is a question of law. We therefore review the question independently on appeal.

*License to Charge Precomputed Interest*

The portion of the buyers' amended answers denominated "Third Affirmative Defense" actually contains three separate defenses. The first reads as follows:

> The alleged contract, which is the basis of this action, and is attached to the complaint as Exhibit "A", is an illegal and invalid contract since same was entered into on the basis of precomputed interest, when the seller was not licensed to do business in this manner, pursuant to Wisconsin Statutes §138.09.

For the purpose of the bank's motion to strike this defense, we must accept as true the factual allegations that the contract was entered into on the basis of precomputed interest and that the seller was not licensed pursuant to sec. 138.09, Stats. (1973). We need not, however, accept the legal conclusions that the seller was required to comply with the licensing requirement of sec. 138.09 or that the contract was illegal and invalid because of its failure to do so.

Section 138.09(1), Stats. (1973),[2] provides that "[b]efore any person may do business under this section or charge the interest authorized by sub. (7), such person shall first obtain a license from the commissioner of banking." Section 138.09(7)(b), provides in relevant part:

> A licensee may charge, contract for or receive a rate of interest which shall not exceed the following:

---

[2] The statutes as they existed in 1973 were in effect when the buyers' alleged defenses arose. None of the subsequent amendments to these statutes are material to this opinion.

1. With respect to instalment *loans* or forbearances which are repayable in substantially equal successive instalments at approximately equal intervals, . . . .

2. With respect to any *loan* . . . . (Emphasis added.)

The statute does not define the term "loan," but does state:

(7) (a) In this section:

1. "Precomputed loan" means a loan in which the debt is expressed as a sum comprising the principal and the amount of interest computed in advance.

Because the seller did not make a loan to any of the buyers, we conclude it was not required to obtain a license to charge precomputed interest pursuant to this statute. The contracts, which are attached to the complaints and which the buyers admit by their answers that they entered into, provide for installment sales rather than loans.

The difference between an installment sale and a loan is recognized by other Wisconsin statutes regulating loans and credit transactions. Because those statutes are *in pari materia* with sec. 138.09, Stats. (1973), they should be read together and harmonized. *Landvatter v. Globe Security Ins. Co.*, 100 Wis.2d 21, 25, 300 N.W.2d 875, 877 (Ct. App. 1980).

"Loan" is defined in the Wisconsin Consumer Act[3] as follows:

"Loan" includes:

(a) The creation of debt by the lender's payment of or agreement to pay money to the customer or to a 3rd party for the account of the customer;

---

[3] The term "loan" is also defined in the chapter of the statutes regulating first lien real estate loans. Section 428.102(4), Stats. (1973), states: " 'Loan' means the creation of debt by the creditor's payment of or agreement to pay money to the customer or to a 3rd party for the account of the customer, or a forbearance by a lender of a debt arising from a loan." This definition is essentially the same as that found in the Wisconsin Consumer Act.

(b) The creation of debt by a credit to an account with the lender upon which the customer is entitled to draw immediately;

(c) The creation of debt pursuant to a credit card or similar arrangement other than pursuant to a seller credit card.

(d) The forbearance by a lender of debt arising from a loan. Sec. 421.301(23), Stats. (1973).

A loan is distinguished from a "consumer credit sale," which the act defines as "a sale of goods, services or an interest in land to a customer on credit where the debt is payable in instalments or a finance charge is imposed." Section 421.301(9), Stats. (1973). The contract attached to the complaint does not create a debt by a lender's payment of money to the buyer. Rather, it provides for the sale of an interest in land on credit, resulting in a debt payable in installments. Section 138.09, Stats. (1973), *inter alia* refers to the Wisconsin Consumer Act. The legislature was therefore aware of the distinction between a loan and a credit or installment sale when the statute was enacted.

Our conclusion that sec. 138.09, Stats. (1973), applies only to loans and not to installment sales is bolstered by sec. 138.09(3)(e), which provides:

A licensee may conduct, and permit others to conduct, at the location specified in its license, any one or more of the following businesses: A loan, finance or discount business under s. 218.01, or an insurance business, or a currency exchange under s. 218.05, or a seller of checks business under ch. 217; but merchandise shall not be sold at such location; and no other business shall be conducted at such location unless written authorization is granted the licensee by the commissioner.

It appears from this subsection that the precomputed loan statute does not contemplate the issuance of a license to an installment seller of land. In light of the difference recognized by the legislature between loans and installment sales, we conclude that the legislature did not

intend by sec. 138.09, Stats. (1973), to preclude install-
ment sellers from charging precomputed interest.

Accordingly, we hold that seller was not required to
obtain a license pursuant to sec. 138.09, Stats. (1973),
before charging precomputed interest on its installment
sales to buyers. Assuming the truth of buyers' factual
allegations, they state no defense to the foreclosure ac-
tion. The court therefore did not err in striking the
defense from buyers' answers.

### Holder in Due Course

Buyers' next defense is that the bank is not a holder
in due course. That allegation states no defense to the
foreclosure action. Whether the bank is a holder in due
course becomes relevant only if buyers have another de-
fense which they would be barred from raising because
of the bank's status as a holder in due course. It would
then be the bank's obligation to raise its status as a hold-
er in due course as a bar to the defenses raised by buy-
ers;[4] buyers need not plead that the bank does not have
that status. Because the allegation stated no defense, it
was properly struck from the pleadings.

### Usury

The buyers' answers allege that the contract is usuri-
ous because it provides for interest greater than that al-
lowed by law. The allegation that the contract is usuri-
ous involves a question of law and therefore need not
be accepted as true. We must accept as true, however,
the factual averment that the contract required an in-
terest rate to be paid which is greater than that allowed
by law.

---

[4] The bank need not, and in fact cannot, allege its status as a
holder in due course in subsequent pleadings, since no pleading is
allowed in response to the answer. Rule 802.01(1), Stats. The
issue would be properly raised by a motion for summary judgment.

The factual allegations underlying the claim of usury constitute at least a partial defense to the foreclosure action. A contract providing a rate of interest which exceeds the legal limit is valid only to secure repayment of the principal in excess of $2,000, and no interest may be recovered on the contract. Section 138.06(1), Stats.

Buyers' answers deny that they defaulted on the contract. If the contracts are usurious, buyers have a defense as to the first $2,000 of principal on their loans, and if the balance on a buyer's loan is less than $2,000, the foreclosure action against that buyer must fail.

The contracts attached to the complaint do not on their face appear to provide a usurious rate of interest. However, parol evidence is admissible to show that usurious interest was actually charged.

[W]e suppose it too plain for argument that the defendant might prove by parol the usurious agreement, if one was made. Parties do not generally reduce their usurious contracts to writing, and unless the real agreement could be shown by parol, the statute would practically be evaded in all cases. *St. Maries v. Polleys,* 47 Wis. 67, 77, 1 N.W. 389, 391 (1879).

*See also Schara v. Thiede,* 58 Wis.2d 489, 494, 206 N.W. 2d 129, 131 (1973) ("Despite the facial legality of an agreement, parol evidence is admissible to show that a writing valid on its face is a mere cover for an illegal transaction.").

Because each buyer may be able to show that the contract was usurious, a legal theory exists which would provide a defense under the facts alleged in the answers. It was error to strike the legally sufficient defense. We therefore reverse the trial court on this point and order that the defense be reinstated in buyers' answers.

Buyers' third counterclaims are based on usury and allege the same facts as those alleged in the answers. For

the reasons stated, those facts support an action for recovery of interest paid. Section 138.06, Stats. We therefore reverse the trial court's order dismissing the counterclaims.

*Seller's Failure to Complete Work on Property*

The bank asserts that a judgment entered in a class action brought by buyers in federal district court against seller and the bank precludes buyers from asserting seller's failure to complete work on the property as a defense or counterclaim in this action. Carl Dickinson (a defendant in this action) and Thomas Boliarias were the named plaintiffs in the federal action. The complaint in federal court stated four claims. The complaint alleged that the plaintiffs purchased parcels of land from seller within a recreational land development, and also purchased memberships entitling them to the use and ownership of its common areas and amenities. The complaint further alleged that seller and the bank made material misrepresentations and inadequate disclosures regarding the financing scheme underlying the development, the failure to obtain necessary permits and licenses, and the bank's lien against the amenities. The complaint stated that amenities which were promised were not completed, including a sailing clubhouse, a boat launch and docking basin, basketball and volleyball courts, an air strip, a riding club complex and stable, and a golf course. The first claim alleged a violation of the federal Interstate Land Sales Act; the second and third alleged federal securities violations; and the fourth alleged common law fraud.

Buyers incorporated the federal complaint in the portion of their answers to the state foreclosure action labelled "Fifth Defense, Affirmative Defenses and First Counterclaims," and then alleged that the bank was involved in the planning and initiation of the land development and is liable for completion of construction of the

amenities. The answers stated that notwithstanding the jurisdictional allegations in the federal complaint, the bank's actions violate the Wisconsin Consumer Act, ch. 138 of the Wisconsin statutes, Wisconsin securities laws, and state law governing fraudulent misrepresentations.

The bank claims that a summary judgment was entered against buyers in the federal action, and that the judgment acts as *res judicata* against the assertion of a defense or counterclaim based on the allegations made in the federal action. Thus, it argues, the motion to dismiss was properly granted pursuant to Rule 802.06(2), Stats., as was the motion to strike for failure to state a legally sufficient defense.

The bank's argument is made for the first time on appeal. At the time the bank's motions were granted by the trial court, the federal action was still pending. We are informed by the parties that judgment has since been entered, but a copy of that judgment has not been made part of the record before us. In order for *res judicata* to bar an action, there must be an identity of parties and of the issues sued on. *Leimert v. McCann,* 79 Wis.2d 289, 294, 255 N.W.2d 526, 529 (1977). Without a copy of the judgment, we cannot determine whether such identities exist. The federal court may have disposed of the matter on jurisdictional grounds without reaching the substantive issues presented for decision. It is also impossible without examining the judgment to determine whether the parties to the federal action at the time judgment was rendered were the same as the parties to this foreclosure action. The record therefore does not support the bank's assertion that buyers' counterclaims and defenses are barred by principles of *res judicata* and we cannot affirm the trial court on that basis.

■

The trial court granted the motions to strike and dismiss on the ground that the same claim between the same

parties was pending in another court. Authority to dismiss a claim because "another action [is] pending between the same parties for the same cause" is found in Rule 802.06(2), Stats. We find no authority, however, for striking a defense on the ground that it forms the basis for a claim in another action. Contrary to the trial court's ruling, the existence of the federal court action did not render the defense legally insufficient. The facts alleged present defenses of breach of contract and failure of consideration. These defenses have facial merit. Buyers should not have been precluded from attempting to develop them simply because they formed the basis of another action. To do so would deprive the buyers of a possibly meritorious defense and might result in their losing the state suit even if they had subsequently prevailed in the federal action. We conclude that the trial court erred in striking the defense and order it reinstated.

We further conclude that the record fails to establish that the state and federal actions are "between the same parties for the same cause." The claims in federal court pertained to federal issues and common law fraud. The state court counterclaims raise issues of breach of contract, violations of Wisconsin securities and misrepresentation laws, and violations of the Wisconsin Consumer Protection Act.[5] This case is similar to *North Cent. Dairymen's Cooperative v. Temkin,* 86 Wis.2d 122, 128, 271 N.W.2d 890, 892 (1978), where the supreme court addressed the propriety of granting a stay of a state court action because another action on the same general subject matter was pending in federal court:

[5] The bank's argument on the motion for dismissal was based on the pendency of another action on the same subject matter. Its argument in the briefs before this court is based on the issue of *res judicata.* The bank has not contended that none of these state law theories would allow buyers to prevail on their counterclaims.

Additionally, the Wisconsin action raises issues peculiarly of state character. The federal court's decision on the allegations of the Sherman antitrust violations and breach of the federal Agricultural Fair Practices Act do not reach the state claims involving: (1) breach of the indenture agreement; (2) tortious interference of contract; (3) violation of sec. 185.43, Stats., relief against breach or threatened breach; (4) a sec. 133.01, Stats., infraction, unlawful contracts; conspiracies. Therefore, the federal forum cannot dispose of the entire controversy.

The supreme court held that a stay would be inappropriate under those circumstances. *See also Lorenz v. Dreske,* 62 Wis.2d 273, 293, 214 N.W.2d 753, 763 (1974), where it was held that a complaint should not be dismissed because of the pendency of another action when the claims asserted in each action were not the same.

Although the federal court may have been able to exercise its pendent jurisdiction to decide the issues of Wisconsin law, those issues were not alleged as claims in the federal suit. The two actions therefore were not based on the "same cause" as required by Rule 802.06(6), Stats.[6]

---

[6] Nor were all three of the state actions brought against parties to the federal action. While Dickinson was a named plaintiff in the federal suit, the Knutsons and Larsons were not. Members of an alleged class do not become plaintiffs in a federal class action and are not bound by the judgment unless they elect to be included and the class is certified by the court. Fed. R. Civ. P. 23(c). Members of a class who are not the named plaintiffs are not barred by *res judicata* from relitigating their claims when a class action is dismissed before the class is certified. *United States v. East Baton Rouge Parish Sch. Bd.,* 594 F.2d 56, 58-59 (5th Cir. 1979). The parties have represented to us in their briefs that judgment was entered in the federal suit before the class was certified. Because the class was never certified, the Knutsons and Larsons were never parties to the federal suit. With respect to them, there was no identity of parties between the state and federal actions.

The bank argues that, through the state court pleadings, the buyers voluntarily placed themselves within the class of plaintiffs

We conclude that the trial court erred in dismissing the buyers' counterclaims based on the pendency of the federal action. We accordingly reverse and order the counterclaims reinstated.

### Summary Judgment

After the buyers' affirmative defenses and counterclaims were struck, the trial court granted the bank's motion for summary judgment. In doing so, it noted that the foreclosure actions had been pending since 1977 and that "banks have to live on the interest they make." Without further discussion, the court held that there was no genuine issue for trial.

We sympathize with the court's desire to dispose of this long-pending matter promptly. Although our review of summary judgment is *de novo, Johnson v. K-Mart Enterprises, Inc.*, 98 Wis.2d 533, 536, 297 N.W.2d 74, 76 (Ct. App. 1980), it is unnecessary for us to determine whether summary judgment was properly granted. As a result of our reversal of the trial court's orders striking defenses and counterclaims, there will be issues before the court that were not before it when it granted summary judgment. If a new motion for summary judgment is brought, however, we anticipate that the trial court will decide it by applying the standard and procedure set forth in *Grams v. Boss*, 97 Wis.2d 332, 294 N.W.2d 473 (1980). In any event, we recommend that the trial court

in the federal court case. No authority is cited to support this proposition. Nothing in the record indicates that the Larsons or Knutsons were ever parties to the federal action, regardless of the allegations in the state court answers. In any event, those answers simply state that the buyers are members of the class of plaintiffs that sued in the federal action; since the class was not certified as a class, their alleged class membership did not make them parties to that action.

give priority to this case on its calendar to the extent that it is able to do so.

*By the Court.*—Orders affirmed in part, reversed in part and cause remanded with instructions. No costs to either party.