Richard OTT and Judy Ott,
Plaintiffs-Respondents,

v.

PEPPERTREE RESORT VILLAS, INC.,
Peppertree Resorts, Ltd. and Joe McFadden,
Defendants-Appellants.

Court of Appeals

*No. 2004AP1226. Submitted on briefs June 14, 2005.
—Decided March 23, 2006.*

2006 WI App 77

(Also reported in 716 N.W.2d 127.)

173

LUNDSTEN, P.J., dissenting.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Jon G. Furlow* of *Michael Best & Friedrich LLP*, Madison.

On behalf of the plaintiffs-respondents, the cause was submitted on the briefs of *Mary Catherine Fons* of *Fons Law Office*, Stoughton.

Before Lundsten, P.J., Deininger and Higginbotham, JJ.

¶ 1. DEININGER, J.   Peppertree Resort Villas, Inc., appeals an order granting relief to Richard and Judy Ott for Peppertree's violations of the Time-Share Ownership Act, WIS. STAT. ch. 707 (2003–04), and the Consumer Credit Transaction Act, WIS. STAT. ch. 422 (2003–04).[1] Peppertree's claims of error and our disposition of them are as follows:

¶ 2.   Peppertree claims the circuit court should not have ordered the Otts' time-share purchase contract rescinded because their statutory right to cancel it expired years before they notified Peppertree of their desire to cancel. Because Peppertree never signed the time-share purchase contract, and it was thus not a valid and enforceable contract, we conclude the circuit court was empowered to order it rescinded.

¶ 3.   Peppertree claims the circuit court erred in concluding that Peppertree's failure to comply with the

---

[1] In addition to Peppertree Resort Villas, Inc., the Otts also named a related entity and one of its employees as defendants in his action. We will refer to the defendants-appellants collectively as Peppertree. All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

Time-Share Act "adversely affected" the Otts despite its finding that the Otts' purchase decision was not influenced by Peppertree's failure to comply with Wis. Stat. ch. 707. We agree with the circuit court that Peppertree's violations of the Time-Share Act "adversely affected" the Otts within the meaning of Wis. Stat. § 707.57(1) because the violations were contrary to the Otts' interests.

¶ 4. Peppertree claims the circuit court erred in denying it an offset for the Otts' use of the time-share during their ownership of it. We conclude that, in order to restore the parties to their positions preceding the rescinded contract, the circuit court should have allowed Peppertree an offset for the reasonable charges for the Otts' occupancy of the time-share prior to rescission of the contract.

¶ 5. Peppertree claims the circuit court should not have awarded the Otts damages for Peppertree's violations of Wis. Stat. ch. 422 because the transaction was a "first lien real estate mortgage loan," and was thus governed by Wis. Stat. ch. 428 and excluded from the applicability of ch. 422. We agree that the transaction at issue is governed by ch. 428, not ch. 422, and we reduce the damage award accordingly.

¶ 6. Peppertree claims the circuit court erred in determining that Peppertree violated the prohibitions against "referral selling plans" under Wis. Stat. § 422.416 and Wis. Admin. Code § ATCP 121. The circuit court found that the Otts suffered no pecuniary loss on account of Peppertree's allegedly premature presentation to them of its referral selling plan and thus granted the Otts no relief for a referral selling violation. We therefore have no need to address this issue and do not do so.

178

## BACKGROUND

¶ 7.  Peppertree owns and operates a resort near Wisconsin Dells, where it sells time-share ownership interests in resort units to the public. The Otts attended a sales presentation at Peppertree's resort in 1994 and purchased a time-share interest in a unit. The Otts signed a time-share contract that was prepared by Peppertree on a pre-printed form approved by the Wisconsin Department of Regulation and Licensing. They also signed a document entitled "Interval Ownership Condominium Land Contract," which was also a pre-printed form prepared by Peppertree. No representative of Peppertree ever signed either of these documents. At the time of the transaction, Peppertree also provided the Otts a "Timeshare Disclosure Statement." Each of the three documents informed the Otts that they could cancel the transaction by notifying Peppertree in writing "within 5 business days from the date you sign the contract or until 5 business days after you receive the time-share disclosure statement, whichever is later."[2]

¶ 8.  The circuit court found that the Otts used the time-share for about five years "without any substantial complaint." During that time, they made monthly payments of principal and interest on their land contract and paid annual maintenance fees to Peppertree. In 1999, however, the Otts planned a move to Florida, and they attempted, without success, to sell their time-share. The Otts then filed a complaint with the Wiscon-

---

[2] The time-share contract and disclosure statement included the quoted language, while the land contract said this: "Buyer may cancel this contract without penalty or obligation within five (5) days after execution of this contract . . . ."

sin Department of Agriculture and Consumer Protection (DATCP) and ultimately retained an attorney to file this action on their behalf in January 2000. The Otts' complaint alleges numerous violations of Wis. Stat. chs. 422 ("Consumer Credit Transactions") and 707 ("Time-Share Ownership") and certain other consumer-protection statutes and regulations. A year after commencing suit, the Otts notified Peppertree by letter that they wished to cancel their time-share purchase contract.

¶ 9. The circuit court disposed of several of the Otts' claims and addressed others in two summary judgment rulings. The court also conducted a bench trial, following which it ruled on the remaining issues. The court entered an order in which it found and directed as follows: (1) The Otts were "adversely affected" by Peppertree's violations of Wis. Stat. ch. 707 within the meaning of § 707.57(1), and they were thus entitled to rescind the time-share purchase contract; (2) Peppertree had offered the Otts a "referral selling plan" in violation of Wis. Admin. Code § ATCP 121, but the Otts suffered no pecuniary loss as a result of the violation; (3) Peppertree's referral selling violation also contravened Wis. Stat. § 422.416(1), entitling them to remedies under Wis. Stat. § 425.305; (4) Peppertree violated Wis. Stat. §§ 422.411 and 422.303, for which the Otts were entitled to recover $2000; (5) The Otts had used their time-share unit for eighteen nights, for which a reasonable use charge would be $1670, but Peppertree was not entitled to an offset of that amount because it had not refunded the Otts' contract payments within twenty days of their demand to cancel as required by Wis. Stat. § 707.47(6); and (6) The Otts were entitled to a refund of all sums they had paid to Peppertree, totaling $10,617.60.

180

¶ 10. Peppertree appeals the order rescinding the Otts' time-share purchase contract and awarding them $12,617.60 in damages.[3] We provide additional background facts in the analysis that follows.

## ANALYSIS

■■■

¶ 11. Although the circuit court conducted a bench trial and made several factual findings, Peppertree challenges only the court's interpretations and applications of several statutes to the facts it found or that were undisputed. We thus have before us questions of law that we decide de novo. *See State v. Setagord,* 211 Wis. 2d 397, 405–06, 565 N.W.2d 506 (1997). When interpreting statutes, we begin with their language and, if the statutory language yields a plain meaning, we apply that meaning and look no further to ascertain the legislature's intent. *See State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. We must give the words of a statute their common, ordinary, and accepted meanings, except that technical or specially defined words are given their technical or special definitions. *See id.,*

---

[3] Peppertree's notice of appeal cites the order the circuit court entered following the bench trial, not the subsequently entered judgment in which the court determined and awarded the Otts reasonable attorneys fees ($60,000), and costs and disbursements ($4,510.50), in addition to the damages previously ordered ($12,617.60). The fact that costs and attorneys fees were later determined and awarded to the Otts under an applicable fee-shifting statute does not preclude Peppertree from appealing, as a matter of right, the order determining the merits of the action. *See Leske v. Leske,* 185 Wis. 2d 628, 630–31, 517 N.W.2d 538 (Ct. App. 1994). No issue regarding the award of costs and fees is before us in this appeal.

¶ 45. We are to interpret statutory language in the context in which it is used, not in isolation, but as part of a whole, in relation to the language of surrounding or closely related statutes, and reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. Finally, we may consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48.

## I. Cancellation or Rescission of the Time-Share Contract

¶ 12. Peppertree claims the circuit court erred when it allowed the Otts to cancel their time-share contract some seven years after they signed it, long after the Otts' five-day right to cancel under WIS. STAT. § 707.47(2) had, in Peppertree's view, expired. The statute reads as follows:

(2) RIGHT TO CANCEL. If delivery of a time-share disclosure statement is required under s. 707.41 (2), the purchaser may cancel a contract for the purchase of a time share until midnight of the 5th business day after whichever of the following is later:

(a) The date that the contract is executed.

(b) The date on which the purchaser receives the last of the documents required to be provided to the purchaser under sub. (1) [the time-share disclosure statement and all amendments and supplements to the statement].

Section § 707.47(2).

¶ 13. Peppertree contends the time-share contract was "executed" within the meaning of WIS. STAT. § 707.47(2)(a) when the Otts signed it on May 29, 1994, notwithstanding the fact that no representative of Peppertree ever signed the contract. It notes that its

interpretation is consistent with the language in the state-approved forms it gave to the Otts, which specify that the right to cancel must be exercised "within 5 business days from *the date you sign the contract*" (emphasis added). Peppertree argues that, if the legislature intended that the five-day cancellation period not begin until both parties had executed the contract, it could easily have said so by adding the words "by both parties" at the end of § 707.47(2)(a). Finally, Peppertree asserts it would be absurd to read the statute, as the Otts would have us do, to mean that, if a time-share seller never signs the time-share contract, a purchaser's right to cancel it never expires.

■

¶ 14. We conclude that, although Peppertree's failure to sign the time-share contract may not have served to indefinitely extend the Otts' statutory five-day right to "cancel" it, Peppertree's failure to sign resulted in there being no valid time-share purchase contract between the parties. A contract to purchase a time-share creates an interest in real estate, *see* Wis. Stat. § 707.03(2), which, under Wis. Stat. § 706.02(1), must be "signed by or on behalf of" the grantor in order to be valid.[4] The Otts also point out that Wis. Stat.

---

[4] The Otts note that the standard, state-approved form contract ("WB-26") that they signed contained the following pre-printed language: "If this contract is not signed at the same time by both parties this contract shall be void unless the second party signs the contract within three (3) business days of the signing by the first party." The quoted sentence, however, was crossed-out in the Otts' contract, presumably by a representative of Peppertree before the Otts signed the document. The Otts assert that the deletion violated Department of Regulation and Licensing administrative rules governing the use of its standard forms. Wis. Admin. Code § RL 16. We do not

§ 707.46(1)(a) requires a time-share purchase contract to contain the "actual date that the contract is executed by each party," which, as Peppertree concedes, means that a valid time-share purchase contract must include the signature of both parties.[5]

██

¶ 15.   We thus conclude no valid time-share purchase contract existed because, without Peppertree's signature, the document signed by the Otts did not conform to the statute of frauds for real estate conveyances, Wis. Stat. § 706.02(1), or the minimum requirements for a time-share purchase contract under Wis. Stat. § 707.46. Accordingly, irrespective of any statutory right to "cancel" a valid contract, a party to an invalid contract may, under the common law, have it rescinded and be restored to the *status quo ante. See First Nat'l Bank & Trust Co. of Racine v. Notte*, 97 Wis. 2d 207, 225–26, 293 N.W.2d 530 (1980) ("When rescission is sought each party is to return to the other such benefits as have been received from the other.") Peppertree concedes in its supplemental brief that rescission is potentially available to the Otts, at least as a common-law equitable remedy, if their time-share purchase contract was invalid for lack of Peppertree's signature, stating that, if we conclude "the effect of an unsigned contract is no contract at all, then the Otts' remedy is

address this assertion inasmuch as the order before us includes no sanctions against Peppertree for improper modification of the state-approved standard form.

[5] In a supplemental brief that we ordered on the question whether a valid time-share purchase contract existed between the parties given the lack of Peppertree's signature, Peppertree quotes Wis. Stat. § 707.46(1)(a) and acknowledges that the statute "requires that all timeshare contracts contain certain minimum requirements, including a signature by both parties."

rescission based upon Peppertree's failure to sign the contract."[6]

---

[6] Peppertree notes in its supplemental brief that it is "hornbook law that rescission is the proper remedy when a contract is not enforceable." It goes on to argue, however, that the circuit court could not order rescission as a remedy under Wis. Stat. § 707.57(1)(a) because of the statute's requirement that the Otts show they were "adversely affected" by Peppertree's failure to comply with chapter 707, which, in Peppertree's view, they failed to do. We discuss the "adversely affected" requirement in the next section of this opinion.

Peppertree also argues in its supplemental brief that rescission was improper because its failure to comply with various requirements under ch. 707 did not constitute "material breaches of the timeshare contract." It maintains that its failures amount to only "technical document violations that did not 'defeat the very object of the contract.' " Our conclusion, however, is not that the circuit court could order the time-share contract rescinded because Peppertree materially breached a valid and enforceable contract, but that it could do so because no such contract existed. Moreover, to the extent this argument challenges the "materiality" of Peppertree's statutory violations, as opposed to a contractual breach, it is subsumed in Peppertree's argument that its violations did not adversely affect the Otts.

Finally, Peppertree argues that the Otts waived any claim for rescission by waiting over five years to seek that remedy, and in the mean time, making 62 monthly payments, paying five years' maintenance fees and enjoying the use of their time-share. We have reviewed the arguments Peppertree made to the circuit court at the conclusion of the bench trial, and we cannot see where it argued the court should not grant rescission because the Otts had waived or unreasonably delayed seeking that remedy. Rather, Peppertree cited the time that had elapsed and the Otts' use and purported enjoyment of the time-share as evidence they had not been adversely affected by any of Peppertree's failures to comply with Wis. Stat. ch. 707. We thus do not address a waiver or laches argument that appears to be first raised on appeal.

185

¶ 16. Rescission is also among the expressly mentioned remedies available to a time-share purchaser under Wis. Stat. § 707.57(1)(a), which provides that, if a seller of time-shares "fails to comply with" Wis. Stat. ch. 707, the purchaser may obtain "appropriate relief, including but not limited to damages, injunctive or declaratory relief, specific performance and rescission." Thus, Peppertree's failure to sign the contract in violation of Wis. Stat. § 707.46(1), also arguably entitles the Otts to seek, and the circuit court to order, rescission of the time-share purchase contract as a remedy under § 707.57(1). Peppertree, however, vigorously disputes that the Otts are entitled to relief under § 707.57(1) because they did not establish that they were "adversely affected" by Peppertree's violations, as the statute requires. We discuss the "adversely affected" issue in the next section of this opinion, concluding here only that the circuit court did not err as a matter of law in ordering rescission and directing Peppertree to refund the Otts' payments.[7]

_____

[7] Although the parties do not elucidate the point, the significance of whether the Otts are entitled to relief under Wis. Stat. § 707.57(1)(a), or to only a common law equitable remedy, apparently lies in the fact that the statute also permits a plaintiff to recover "reasonable attorney fees." *See* § 707.57(1)(b) ("A person . . . entitled to relief under par. (a) is also entitled to recover costs, disbursements and reasonable attorney fees . . . ."). We conclude in a subsequent section of this opinion that the Wisconsin Consumer Act, Wis. Stat. chs. 421–427, and thus the remedies and relief available thereunder, do not apply to the time-share purchase transaction at issue. We also note in the last section of this opinion that the Otts have not cross-appealed the circuit court's denial of relief under Wis. Stat. § 100.20(5) for Peppertree's alleged violation of an administrative rule regulating the use of "referral selling plans." Accordingly, given the circuit court's and our disposition of their

¶ 17. The Otts make several alternative arguments as to why we should affirm the circuit court's conclusion that they retained the statutory right to cancel their time-share purchase contract through February 2001, when they first notified Peppertree of their desire to cancel. For example, they argue that, because Peppertree never provided them all of the necessary documents needed to comply with the disclosures mandated under WIS. STAT. § 707.41, their right to cancel never expired under WIS. STAT. § 707.47(2)(b), which provides that the cancellation right extends "until midnight on the 5th business day after whichever of the following is later: . . . (b) The date on which the purchaser receives the last of the documents required to be provided to the purchaser." They also maintain that incorrect wording of the notice of their cancellation right in the separate land contract they signed (see footnote 2) justifies an "extended right to cancel." Because we conclude the parties had no valid contract, we do not address these additional justifications for a conclusion that the Otts' statutory right to cancel the contract did not expire before they exercised it.

## II. Were the Otts "Adversely Affected" by Peppertree's Violations?

■

¶ 18. The circuit court concluded on summary judgment that Peppertree violated several provisions of WIS. STAT. ch. 707 in its transaction with the Otts, rulings that Peppertree does not specifically challenge

other claims against Peppertree, it appears the only statute that would permit the Otts to recover the attorney fees they were awarded (see footnote 3) is § 707.57(1)(b).

on appeal.[8] Peppertree contends, however, that the circuit court erred in granting the Otts relief under WIS. STAT. § 707.57(1)(a) because the Otts did not establish they were harmed in any way as a result of Peppertree's violations. Peppertree notes that the circuit court found in its post-trial decision "that the Otts liked their time-share, that they used it without any substantial complaint until very late in the game," and, further, that "the Otts got much of what they thought they were going to get here." Thus, in Peppertree's view, the Otts did not establish that they were "adversely affected" as the remedial statute requires. *See* WIS. STAT. § 707.57(1)(a) ("[A]ny person . . . *adversely affected* by the failure to comply [with this chapter] has a claim for appropriate relief . . ." (emphasis added).).

¶ 19. Peppertree contends that, because a person must be "adversely affected" in order to obtain relief under WIS. STAT. § 707.57(1)(a), this means the Otts must show that they suffered a specific loss or harm on account of Peppertree's violations, or, at a minimum, that one or more of Peppertree's failures to comply with statutory requirements had "some effect or influence" on their decision to purchase the time-share. We disagree and conclude, as did the circuit court, that Peppertree's failure to comply with the Time-Share Act in its transaction with the Otts was contrary to the Otts' interests, thereby rendering the Otts "adversely affected" by Peppertree's violations.

---

[8] The provisions the circuit court determined Peppertree had violated include WIS. STAT. § 707.46(1)(a), which requires a time-share contract to contain the "actual date that the contract is executed by each party," and WIS. STAT. § 707.41, which requires a time-share seller to provide purchasers certain documents at the time of purchase.

¶ 20.  The phrase "adversely affected" in Wis. Stat. § 707.57(1) is not defined in Wis. Stat. ch. 707. Peppertree points to a dictionary definition of the word "affect," which can mean "to produce a material influence upon,"[9] and argues that we must read the statute as requiring a causal link between Peppertree's failure to comply with the statute and the Otts' decision to purchase a time-share. To do otherwise, in Peppertree's view, transforms ch. 707 into a "strict liability statute" that permits any purchaser to void a time-share purchase contract, even when a seller's failure to comply in no way impacts the purchase decision. Peppertree maintains that affirming the circuit court's interpretation will serve to encourage claims from "opportunistic litigants, like the Otts, who liked and used their timeshare but no longer have a use for it." Finally, Peppertree argues that the circuit court placed too much emphasis on the word "adverse" as opposed to the equally important requirement that the Otts be "affected" by the statutory violations.

¶ 21.  We agree with Peppertree that a proper starting point for interpreting the phrase "adversely affected" as used in Wis. Stat. § 707.57(1)(a) is to consult a dictionary for the common, ordinary meaning of these words. *See Kalal,* 271 Wis. 2d 633, ¶ 45. A broad, primary meaning of "affect" is "to act on," and of "affected," to be "acted upon." The Random House Dictionary of the English Language 33 (2nd ed. 1987). As Peppertree acknowledges, "adverse" can mean "acting against or in a contrary direction," "opposed to one's interests" or "unfavorable."[10] There can be little dispute

---

[9] *See* Webster's Ninth new collegiate Dictionary 61 (1985).
[10] *Id.*

that SUBCHAPTER IV of WIS. STAT. ch. 707 was enacted, as its title expresses, for the "Protection of Purchasers." We thus conclude that any violations by a time-share seller of the purchaser protections enacted in WIS. STAT. ch. 707 "act upon" the prospective purchaser and are "opposed" or "contrary" to the prospective purchaser's "interests," even when the violations cannot be shown to have specifically influenced a purchase decision.

¶ 22. In short, we conclude the statutory language is broader than Peppertree contends. The statute provides that "*any person* or class of persons *adversely affected* by the failure to comply has a claim,*" WIS. STAT. § 707.57(1) (emphasis added), as opposed to "any person [whose decision to purchase a time-share is] adversely affected by the failure to comply has a claim," which is the reading Peppertree advocates. Moreover, as we discuss further below, the language of § 707.57(1)(a) differs markedly from other statutes that also create rights of action on behalf of consumers against businesses that violate statutory mandates, but which expressly require a plaintiff to show that the violation caused the plaintiff to suffer pecuniary loss.

¶ 23. Other language in WISCONSIN STAT. § 707.57 supports our interpretation that "adversely affected" should not be read as narrowly as Peppertree advocates. Section 707.57(4) directs that "[t]he remedies provided by this chapter shall be liberally administered." That direction, coupled with the express availability of nonpecuniary remedies under § 707.57(1)(a) (e.g., injunctive and declarative relief), persuade us that the legislature did not intend that a plaintiff must show some specific harm or pecuniary loss resulting from a seller's violations in order to obtain a remedy under § 707.57(1). Rather, we conclude the requirement that a plaintiff be "adversely affected" by a violation serves to

exclude those who have not entered into a transaction with a time-share seller from bringing suit for the seller's violations of Wis. Stat. ch. 707.

¶ 24. In addition to the common and ordinary meaning of the words at issue and their immediate context, our conclusion is based as well on what Wisconsin Stat. § 707.57(1) does not say. The subsection does *not* require a plaintiff to show "pecuniary loss" on account of a violation, nor does it impose a causation-of-harm requirement of any kind, as do other statutes granting remedies for consumer protection violations. *See Kalal,* 271 Wis. 2d 633, ¶ 46 (noting that, consistent with the "plain meaning" rule, the "language of . . . closely-related statutes" may be considered). For example, the statute that creates a private right of action for advertising fraud expressly requires a plaintiff to be a "person suffering pecuniary loss because of a violation," as does a similar statute that addresses "methods of competition and trade practices." *See* Wis. Stat. §§ 100.18(11)(b) and 100.20(5). Indeed, even subsection (2) of § 707.57 provides that, when the DATCP or a district attorney successfully obtains injunctive relief on account of ch. 707 violations, a court may also "make such orders or judgments as may be necessary to restore to any person any *pecuniary loss suffered because of* the acts or practices involved." § 707.57(2)(a) (emphasis added). In our view, the legislature's choice of the term "adversely affected" in § 707.57(1), in lieu of any requirement for a showing of pecuniary loss as specified in other consumer remedial statutes, indicates a legislative intent that no allegation or showing of specific harm or loss is a prerequisite to obtaining relief under § 707.57(1).[11]

---

[11] Peppertree attempts to find support in Wis. Stat. § 707.57(2)(a) for its argument that the legislature intended

¶ 25. Finally, we note that the Otts are not precluded from having been "adversely affected" by Peppertree's violations of Wis. Stat. ch. 707 because of our conclusion that they had no valid contract with Peppertree. As Peppertree acknowledges, Wis. Stat. § 707.40 provides that the subchapter entitled "Protection of Purchasers" applies to "all time shares subject to this chapter," and there is thus no dispute that the parties' dealings were governed by the statutory protections for purchasers regardless of whether a valid time-share purchase contract resulted. *Cf. Pliss v. Peppertree Resort Villas, Inc.*, 2003 WI App 102, ¶ 22, 264 Wis. 2d 735, 663 N.W.2d 851 (rejecting a claim that "the trial court's rescission of the time-share contract pursuant to Wis. Stat. § 707.57 defeated . . . other claims because the rescission negated any 'sale' ").

¶ 26. In sum, the Otts were "adversely affected" by Peppertree's violations of Wis. Stat. ch. 707 because the Otts entered into a transaction with Peppertree to purchase a time-share, and, in the course of the parties' dealings, Peppertree did not provide the Otts with all of the purchaser protections to which they were statutorily entitled. The violations thus acted upon the Otts in

purchasers who pursue a private remedy under § 707.57(1) must allege and show the causation of pecuniary loss from a seller's violations. Peppertree would have us transport the requirement for "pecuniary loss suffered because of the acts or practices involved in the action" from subsection (2)(a) to subsection (1) of the statute. We are not permitted to re-write the statute, however, and we conclude the difference in language the legislature chose to use in the two subsections supports our conclusion that it did *not* intend to impose the causation-of-pecuniary-loss requirement on private plaintiffs who bring a claim under § 707.57(1).

a manner that was contrary to their interests, and no further showing was required.[12]

¶ 27. Before addressing Peppertree's remaining claims of error, we note that its sole argument regarding the "adversely affected" requirement is that the circuit court wrongly interpreted WIS. STAT. § 707.57(1)(a). Peppertree asserts at the beginning of its argument that the "circuit court's interpretation of the Timeshare Act raises three questions of law," for which the "standard of review is de novo." In other words, Peppertree does *not* argue in the alternative, that, even if the Otts were entitled to obtain some type of relief under § 707.57(1), the court erroneously exer-

---

[12] Peppertree points to a contrary result reached by the Connecticut Supreme Court, which concluded that a condominium purchaser could not rescind a purchase contract under a statute allowing "appropriate relief" for "persons adversely affected by the failure to comply" with a regulatory statute, where the trial court found that the statutory violations " 'played no role at all in [the purchaser's] decision to terminate the contract.' " *See Fruin v. The Colonnade One at Old Greenwich Ltd. P'ship*, 676 A.2d 369, 374 (Conn. 1996). We do not find the Connecticut court's interpretation of that state's condominium act particularly helpful when analyzing Wisconsin's time-share act. The court's conclusion in *Fruin* was "reinforced" (as ours is here) by its consideration of other, differently worded state regulatory statutes. *Id.* at 374–75. The fact that a court in another state has arrived at a different interpretation of "adversely affected" after considering the term within the context of that state's consumer regulatory statutes does not persuade us that the Wisconsin legislature intended that meaning when it enacted WIS. STAT. § 707.57(1). Rather, as we have explained above, to determine the Wisconsin statute's meaning, we rely on definitions of the words the legislature employed in the statute, on the language in other parts of § 707.57 and on the statutory context provided by other Wisconsin consumer remedial statutes.

cised its discretion in granting the Otts the remedy of rescission on the present record. Accordingly, we do not consider whether the circuit court should have granted some other, lesser relief than rescission given its finding that the Otts suffered no specific harm or loss on account of Peppertree's violations.

*III. Offset of Reasonable Charge for Use*

¶ 28.   Peppertree claims the circuit court erred in refusing to allow an offset against its refund of Otts' payments for the "reasonable charge" for the Otts' use of the time-share unit since 1994. WISCONSIN STAT. § 707.47(6)(a) and (b) provide that, upon the purchaser's cancellation of a time-share purchase contract under the "five-day right to cancel" provision, a seller must refund "all payments made by the purchaser . . . within 20 days after receipt of the notice of cancellation," but "[i]f the purchaser has used or occupied the time-share property for more than 12 hours before cancellation," the seller may reduce the refund "by a reasonable charge to cover the length of stay." The circuit court agreed with the Otts that, because Peppertree did not refund their payments within twenty days of receiving their notice of cancellation in 2001, it forfeited the right to an offset for their use of the time-share. The court found, however, "for appeal purposes only," that the Otts had used the time-share for a total of eighteen nights, for which a reasonable charge would be $1670. Peppertree contends it is entitled to this offset against the $10,617.60 in payments it was ordered to refund to the Otts. We agree.

¶ 29.   As we have explained, the remedy to which Otts are entitled is rescission, not cancellation under

194

Wis. Stat. § 707.47, and rescission generally requires that the parties be restored to their respective positions before their ill-fated transaction. This means that the Otts get their payments back, Peppertree gets the time-share back, and Peppertree should be compensated for the Otts' use of the premises for the eighteen nights that Peppertree ostensibly could have rented the unit to others. Peppertree does not quibble with what the circuit deemed a "reasonable rate," ninety dollars per night. Accordingly, on remand, the damages awarded the Otts shall be reduced by $1670.

*IV. Consumer Credit Transaction vs.*
*First Lien Real Estate Mortgage Loan*

¶ 30.    Peppertree next asserts that the circuit court erred in concluding that the Otts' obligation to pay Peppertree monthly payments of principal and interest, as set forth in the time-share purchase contract and the accompanying land contract, constituted a "consumer credit transaction" subject to the requirements of Wis. Stat. ch. 422.[13] We agree with Peppertree that the transaction at issue involved a "first lien real estate mortgage" loan governed by Wis. Stat. ch. 428, and the transaction was thus specifically excluded from the application of ch. 422. *See* Wis. Stat. § 421.202(7) ("Chapters 421 to 427 do not apply to . . . [t]ransactions subject to ch. 428").

---

[13] Peppertree clarifies in its reply brief that it agrees its transaction with the Otts meets the criteria for being a "consumer credit transaction," but maintains that it is nonetheless a type of transaction that is expressly excluded from the application of the Wisconsin Consumer Act by Wis. Stat. § 421.202(7).

¶ 31. WISCONSIN STAT. § 428.101 provides that it "applies to . . . [l]oans made . . . by a creditor . . . to a customer and which are secured by a first lien real estate mortgage or equivalent security interest if the amount financed is $25,000 or less." "Loan" is defined as including "a forbearance by a lender of a debt . . . ." WIS. STAT. § 428.102(4). The parties' time-share contract recites that the "transaction is conditioned upon . . . the execution of a time-share land contract in the form attached hereto," and the land contract recites the Otts' promise to pay Peppertree the balance of the purchase price, $6988, together with interest, in eighty-four equal monthly payments. The land contract further provides that "[t]itle to the property is retained by SELLER as security for BUYER'S obligation herein," and it grants Peppertree customary land contract vendor's remedies on the purchaser's default (e.g., acceleration of the balance of the purchase price, strict foreclosure, specific performance).

¶ 32. The Otts contend that Peppertree's sale of the time-share on credit does not constitute a "loan" within the meaning of WIS. STAT. ch. 428 because Peppertree did not advance funds to them or to a third party on their behalf. Peppertree readily acknowledges that it does not advance funds to time-share purchasers or on their behalf to third-party sellers, but it claims that its "forbearance" of the balance of the purchase price at the time of closing comes within the § 428.102(4) definition of a "loan." We agree.

¶ 33. The Otts maintain, however, that the sale of real estate on credit is not a "forbearance" within the meaning of WIS. STAT. § 428.102(4) based on our analysis in *First Nat'l Bank of Wisconsin Rapids v. Dickin-*

196

*son*, 103 Wis. 2d 428, 308 N.W.2d 910 (Ct. App. 1981). There, we considered the definition "loan" in the Wisconsin Consumer Act, a definition that closely parallels the definition in § 428.102(4). We distinguished a "loan" from a "consumer credit sale," concluding that a "loan" did not include the sale of goods " 'or an interest in land to a customer on credit where the debt is payable in installments.' " *Id.* at 435. We agree with Peppertree, however, that our analysis in *Dickinson* simply did not address whether a credit sale of goods or land might constitute a "forbearance," a question the supreme court has answered in the affirmative:

> [T]he purchase of goods creates an obligation to pay for them . . . . [U]pon the failure to pay for the goods received at the time of purchase, a debt is created and a relationship of debtor-creditor created . . . . Here, the prior agreement as to the terms of financing really has no effect on the actual forbearance. In the Agreement the parties merely agree to forbear; the actual forbearance occurs after the purchase when the purchaser does not pay within thirty days.

*State v. J.C. Penney Co.*, 48 Wis. 2d 125, 135, 179 N.W.2d 641 (1970).

¶ 34.   Finally, the Otts claim that Peppertree is not a "creditor" within the meaning of Wis. Stat. ch. 428, because it does not "regularly engage[] in, arrange[] for or procure[] from 3rd persons, loans within the scope of this subchapter." Wis. Stat. § 428.102(2). The argument is circular, however, and relies on a conclusion that the Ott-Peppertree transaction was not a "loan within the scope of" ch. 428, which we have concluded it was. There is no dispute that Peppertree "regularly engaged" in such transactions.

¶ 35.   Thus, we conclude that the Otts' transaction with Peppertree was a "loan . . . secured by a first lien

real estate mortgage *or equivalent security interest,*" WIS. STAT. § 428.101(3) (emphasis added). *See Milbrandt v. Huber,* 149 Wis. 2d 275, 288, 440 N.W.2d 807 (Ct. App. 1989) ("The relationship between vendor and vendee in a land contract is analogous to that of equitable mortgagor and mortgagee; the mortgagor has an equity of redemption, the mortgagee the correlative right of foreclosure."). The transaction was thus "subject to ch. 428" and specifically excluded from the provisions of WIS. STAT. ch. 422. *See* WIS. STAT. § 421.202(7). Accordingly, we conclude the circuit court erred in determining that the Otts were entitled to recover $2000 for violations of ch. 422. On remand, this amount must be deducted from the amount awarded to the Otts, such that, together with the offset previously ordered, the total amount of damages due the Otts from Peppertree shall be $8,947.60 ($12,617.60 - $1,670, offset for use - $2,000, ch. 422 recovery = $8,947.60).[14]

---

[14] Peppertree also directs our attention to a "Staff-Brief," No. 86–6 (July 15, 1986), prepared by the Wisconsin Legislative Council Staff, entitled "Regulation of Time-Share Real Property in Wisconsin and Other States; Discussion of Model Time-Share Acts," which discusses other "Wisconsin consumer protection laws [that] may be applicable to the sale or marketing of time-share interests." This document notes that the "Wisconsin Consumer Act does *not* apply to . . . transactions subject to ch. 428 . . . [which] governs *first lien* mortgage loans of $25,000 or less on real estate," and states that, "with reference to time-share property, the Wisconsin Consumer Act applies only under limited circumstances (e.g., where there is a second mortgage involving $25,000 or less . . .)." Our conclusion does not rely on this purported indicator of legislative intent, but on the plain language of WIS. STAT. §§ 421.202(7) and 428.101(3), and the statutory definitions in WIS. STAT. § 428.102. At best, the Legislative Council brief perhaps serves to confirm our conclusion regarding the proper interpretation of these statutes. *See*

## V. The Referral Selling Plan

¶ 36.   The circuit court concluded that Peppertree had violated prohibitions against the use of a "referral selling plan" to induce a consumer purchase, as set forth in both WIS. STAT. § 422.416 and WIS. ADMIN. CODE § ATCP 121.02. A "referral selling plan" is "any method of sale where the seller . . ., *as an inducement for a consumer sale,* offers compensation to a prospective buyer . . . either for a) names of other prospective buyers . . ., or b) otherwise aiding the seller . . . in making consumer sales." WIS. ADMIN. CODE § ATCP 121.01(3) (emphasis added).[15] Peppertree does not deny that it had such a plan in place with respect to its sale of time-share units but maintained at trial that it did not mention the referral selling plan to the Otts until *after* they had signed the paperwork to buy a unit, and thus, the referral plan could not have acted as an "inducement" of their purchase.

¶ 37.   The circuit court found that the referral selling plan was presented to the Otts on the same day they signed their purchase contract, and, hence, before their five-day right to cancel would have expired, thus creating an inducement for them not to cancel it. In the

---

*Kalal,* 271 Wis. 2d 633, ¶ 51. ("[A]s a general matter, legislative history need not be and is not consulted except to resolve an ambiguity in the statutory language, although legislative history is sometimes consulted to confirm or verify a plain-meaning interpretation.").

[15] The term used in WIS. STAT. § 422.416 is "referral transaction," which is a "consumer transaction" where a "merchant" gives or offers to give "a rebate or discount or otherwise pay[s] or offer[s] to pay value to the customer *as an inducement for a consumer transaction* in consideration of the customer's giving to the creditor the names of prospective customers." § 422.416(1) (emphasis added).

199

Otts' view, and that of the circuit court, because the purchase transaction was not yet "final" when the plan was presented, Peppertree employed it as "an inducement" and thus violated both the statute and the administrative rule. Peppertree claims the circuit court erred in concluding that the presentation of a referral selling plan to a time-share purchaser after the purchaser has signed a time-share purchase contract, but before the right to cancel it expires, violates either WIS. STAT. § 422.416 or WIS. ADMIN. CODE § ATCP 121.02. We conclude, however, that we need not address this claim of error.

¶ 38.   First, WIS. STAT. § 422.416, like all other "consumer credit transaction" protections set forth in WIS. STAT. ch. 422, does not apply to the present transaction because, as we have explained, the present transaction is governed by WIS. STAT. ch. 428 and is specifically excluded from the applicability of ch. 422. *See* WIS. STAT. § 421.202(7). As for Peppertree's alleged violation of the administrative regulation, WIS. ADMIN. CODE § ATCP 121.02,[16] the circuit court determined that the Otts suffered no pecuniary loss as a result of Peppertree's presentation of its referral selling plan to them. Because the Otts' claim for the violation of § ATCP 121.02 rested on WIS. STAT. § 100.20(5), which

_____

[16] We note that the recited authority for the enactment of WIS. ADMIN. CODE § ATCP 121 is *not* WIS. STAT. § 422.416, but WIS. STAT. § 100.20(2). *See* introductory note to WIS. ADMIN. CODE § ATCP 121 ("This chapter is adopted under authority of s. 110.20(2), STATS."). Section 100.20(2)(a) authorizes the DATCP to "issue general orders forbidding methods of competition in business or trade practices in business which are determined by the department to be unfair." Thus, even though § 422.416 does not reach the present transaction, § ATCP 121.02 apparently does.

requires a plaintiff to suffer "pecuniary loss because of a violation," the court awarded no damages or other relief to the Otts for the violation. The Otts have not cross-appealed the court's findings and conclusion in this regard.

¶ 39. Thus, regardless of whether we agree or disagree with the circuit court's conclusion that the presentation of a referral selling plan within the five-day cancellation period constitutes a violation of § ATCP 121.02, the relief the circuit court ordered would not be affected in any way.[17] Accordingly, we do not address the issue further.

## CONCLUSION

¶ 40. For the reasons discussed above, we reverse the appealed order insofar as it awarded $2000 in damages for violations of Wis. Stat. ch. 422 and insofar as it denied an offset of $1670 for reasonable charges for use of the time-share unit. Accordingly, on remand, the amount of damages the Otts are entitled to recover from Peppertree shall be reduced by $3670 to $8,947.60. The order is affirmed in all other regards.

*By the Court.*—Order affirmed in part and reversed in part.

¶ 41. LUNDSTEN, P.J. (*dissenting*). I agree with the majority that rescission, not cancellation, is the

---

[17] Because we conclude the Otts were "adversely affected" by Peppertree's violations of Wis. Stat. ch. 707, and they are thus persons "entitled to relief under [§ 707.57(1)](a)," as we have noted (see footnote 7), they may "recover costs, disbursements and reasonable attorney fees" under Wis. Stat. § 707.57(1)(b). Neither the damages we affirm in the appealed order nor the circuit court's subsequent award of fees and costs are dependent on Peppertree's alleged violation of Wis. Admin. Code § ATCP 121.02.

pertinent issue in this case. We part company over the majority's conclusion that, as a matter of common law and statutory interpretation, the circuit court had the power to order rescission of the time-share contract. As I see it, the Otts' failure to show that they were "adversely affected" by any of Peppertree's violations of WIS. STAT. ch. 707 (2003–04) requires reversal of the circuit court's decision to order rescission.[1] The majority first discusses common law rescission, but I begin with rescission under WIS. STAT. § 707.57(1)(a).

¶ 42.    There is nothing complicated or ambiguous about the statutory language at issue here. If a time-share seller subject to WIS. STAT. ch. 707 fails to comply with the requirements in that chapter or fails to comply with a time-share instrument covered by that chapter, any person "adversely affected by the failure to comply has a claim for appropriate relief, including but not limited to damages, injunctive or declaratory relief, specific performance and rescission." WIS. STAT. § 707.57(1)(a). Thus, under the statute's plain language, a requirement for obtaining relief is that the complaining person be "adversely affected by the [time-share seller's] failure to comply." Merely proving a failure to comply is not sufficient; the claimant must show that he or she was "adversely affected by the failure." Id. (emphasis added).

¶ 43.    Here, the Otts demonstrated statutory violations, but no resulting adverse effect. The Otts do not allege that any of Peppertree's violations affected, much less adversely affected, their decision to purchase the time-share. They do not allege that they got something other than what they thought they were getting. They

<hr>

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

allege no harm whatsoever. Rather, after about five years, the Otts decided to sell and had difficulty finding a buyer. They then hired a smart attorney, sued Peppertree, and eventually proved that during the contracting process Peppertree failed to comply with some statutory provisions of no consequence to the Otts.

¶ 44.   Therefore, because the Otts suffered no "adverse effect" as a result of Peppertree's violations, I conclude that the Otts do not qualify for a remedy under Wis. Stat. § 707.57(1)(a). I turn my attention to the majority's statutory analysis.

¶ 45.   The majority concludes that the phrase "adversely affected" in Wis. Stat. § 707.57(1)(a) is essentially a standing requirement that "serves to exclude those who have not entered into a transaction with a time-share seller from bringing suit for the seller's violations of Wis. Stat. ch. 707." Majority, ¶ 23. I cannot agree, however, that the legislature would use the words "adversely affected" to convey the very limited notion that parties transacting with a time-share seller need only show some violation of Wis. Stat. ch. 707 in order to obtain rescission or some other "appropriate relief." Wis. Stat. § 707.57(1)(a). This interpretation, at a minimum, has the effect of nullifying the word "adversely."

¶ 46.   The majority notes that the word "affected" is defined in part as "acted upon," and the word "adverse" denotes "acting against" or "opposed to" a person's interests. Majority, ¶ 21. So far so good. But then the majority simply declares that all persons transacting with time-share sellers are "adversely affected" by a violation of Wis. Stat. ch. 707 by the sellers.[2] Majority, ¶ 21. From

[2] For reasons that are not apparent, the majority speaks in terms of whether a violation influenced a purchase decision. Specifically, the majority states, "any violations by a time-share

203

this declaration flows the majority's conclusion that the legislature intended to employ the phrase "adversely affected" to denote nothing more than the convergence of a party who has "transacted" with a time-share seller and a seller's violation of some provision of ch. 707. But if the legislature's goal were so limited, it surely would have used language different than "adversely affected." Indeed, even if I could accept the fiction that the Otts were "affected" by Peppertree's violations in some technical sense, the use of the word "affected" alone would achieve this narrow purpose. How then does the majority explain the legislature's use of the phrase "*adversely* affected *by* the failure [emphasis added]"? It does not.

¶ 47.   The majority finds support for its interpretation of WIS. STAT. § 707.57(1)(a) in two other consumer protection statutes:   WIS. STAT. §§ 100.18(11) and 100.20(5). These statutes, respectively, authorize private remedies for "fraudulent representations" and improper "methods of competition and trade practices." The majority points out that, unlike § 707.57(1)(a), these statutes require that a plaintiff show "pecuniary loss" in order to maintain an action. The majority concludes that the legislature's choice not to use a "pecuniary loss" requirement in § 707.57(1)(a) indicates

seller of the purchaser protections enacted in WIS. STAT. ch. 707 'act upon' the prospective purchaser and are 'opposed' or 'contrary' to the prospective purchaser's 'interests,' even when the violations cannot be shown to have specifically *influenced a purchase decision.*" Majority, ¶ 21 (emphasis added). What is not apparent to me is why the majority singles out effects on *purchase decisions.* I understand the majority to be holding that all violations of ch. 707 by time-share sellers, regardless of any consequence, satisfy the "adversely affected" requirement in WIS. STAT. § 707.57(1)(a).

204

the legislature's intent that there be no "harm" requirement. Majority, ¶ 24. I fail to see the connection.

¶ 48. WISCONSIN STAT. §§ 100.18(11)(b) and 100.20(5) authorize private actions for *damages only.* When the only authorized remedy is damages, it makes sense to require that a plaintiff show "pecuniary loss." In contrast, the remedies available under WIS. STAT. § 707.57(1)(a) are not limited to damages. The time-share remedy statute authorizes "appropriate relief, including but not limited to damages, injunctive or declaratory relief, specific performance and rescission." A "pecuniary loss" requirement would be a poor match with remedies such as specific performance or injunctions. Why should a party be required to show a pecuniary loss in order to compel a violating time-share seller to perform as the law requires? What about the time-share owner who seeks an injunction to *prevent* pecuniary loss?

¶ 49. I am equally unpersuaded by the majority's comparison with WIS. STAT. § 707.57(2)(a). The majority notes that when a government actor obtains injunctive relief based on a time-share seller's failure to comply with WIS. STAT. ch. 707, the circuit court may also " 'restore to any person any pecuniary loss suffered.' " Majority, ¶ 24 (quoting § 707.57(2)(a) (emphasis deleted)). Why does the authorization of compensation for pecuniary loss in this separate remedial subsection have any bearing on the meaning of "adversely affected" in § 707.57(1)(a)? I do not find the answer in the majority's decision.

¶ 50. In sum, I do not see why a legislative decision elsewhere in the statutes to impose the burden of showing a "pecuniary loss" as a prerequisite to an award of damages sheds light on the legislature's thinking when it imposed the more general "adversely affected"

205

requirement in a statute that authorizes "appropriate relief," including, but not limited to, injunctive relief, declaratory relief, and specific performance. WIS. STAT. § 707.57(1)(a).

¶ 51. The majority's statutory holding can be summarized as follows: under WIS. STAT. § 707.57(1)(a), the Otts are eligible for rescission of their time-share contract solely because (1) the Otts transacted with Peppertree under WIS. STAT. ch. 707, and (2) Peppertree failed to comply with at least one provision in ch. 707, regardless whether the violation had any adverse effect, indeed regardless whether it had any effect, on the Otts. The wisdom of imposing this sort of strict liability on time-share sellers—that is, liability without regard to consequences—is something reasonable people may debate. I can imagine the legislature reasonably determining that this type of strict liability would create a powerful and desirable incentive for time-share sellers to comply with the dictates of ch. 707. The problem is that the legislature plainly has not done so.[3]

¶ 52. Therefore, I conclude the majority errs when it holds that the Otts are eligible for rescission under WIS. STAT. § 707.57(1)(a), and turn my attention to an alternative basis the majority relies on to affirm the circuit court's rescission order.

¶ 53. In section I of its decision, the majority concludes that, apart from remedies that might be

---

[3] In this paragraph, I have intentionally characterized the majority as holding that the Otts are *eligible* for rescission, rather than entitled to it. The reason I do so is because the majority avoids directly addressing whether the Otts were entitled to rescission by effectively holding that Peppertree waived any argument that the Otts were not entitled to rescission. This is a topic I address later in my dissent.

authorized by WIS. STAT. § 707.57(1)(a), common law principles support the rescission order. In this section, the majority begins by addressing Peppertree's argument that the circuit court erred when it allowed the Otts to *cancel* their time-share contract under WIS. STAT. § 707.47(2). The majority notes Peppertree's concessions that it did not sign the purchase contract and that a valid *time-share* purchase contract must include the signature of both parties. The majority concludes that Peppertree's failure to sign the contract resulted in there being no valid purchase contract between the parties for two reasons: first, because WIS. STAT. § 706.02(1) requires that a contract for the purchase of real estate, such as a time-share contract, must be "signed by or on behalf of" the grantor in order to be valid and, second, because WIS. STAT. § 707.46(1)(a) requires that a time-share purchase contract contain the "actual date that the contract is executed by each party," Peppertree's failure to sign the contract resulted in no date of execution.

¶ 54.   Having concluded that there is no "valid" contract, the majority's common law analysis proceeds as follows:

1.   "[I]rrespective of any statutory right to 'cancel' a valid contract, a party to an invalid contract may, under the common law, have it rescinded and be restored to the *status quo ante*."

2.   "Peppertree concedes . . . that rescission is potentially available to the Otts, at least as a common-law equitable remedy, if their time-share purchase contract was invalid for lack of Peppertree's signature . . . ."

3.   Regardless of the availability of rescission under WIS. STAT. § 707.57(1)(a), "the circuit court did not

err as a matter of law in ordering rescission and
directing Peppertree to refund the Otts' payments."

Majority, ¶¶ 15–16. The problem with this analysis is
that granting rescission requires an exercise of discre-
tion by the circuit court, and that did not occur here.

¶ 55. Common law rescission of a contract is an
equitable remedy. *See Tietsworth v. Harley-Davidson,
Inc.*, 2004 WI 32, ¶ 36, 270 Wis. 2d 146, 677 N.W.2d 233.
Whether to grant rescission of a contract is a discre-
tionary call. *See Mueller v. Michels*, 184 Wis. 324, 341,
197 N.W. 201 (1924). This exercise of discretion neces-
sarily involves weighing factors in a particular case
bearing on the fairness of granting rescission. For
example, in *Tam v. Luk*, 154 Wis. 2d 282, 453 N.W.2d
158 (Ct. App. 1990), a case in which a party sought
rescission based on misrepresentation, we concluded
that rescission would not be granted absent a showing
of "prejudice, damage or detriment" to the party seeking
rescission. *Id.* at 288–89. We went on to quote
A.L.R.: " 'The proposition that a purchaser cannot
rescind unless the thing of which he [or she] claims is of
practical consequence from some point of view is not
difficult to maintain.' " *Tam*, 154 Wis. 2d at 289 (quot-
ing Annotation, 106 A.L.R. 125, at 129).

¶ 56. The majority does not and could not discuss
whether the circuit court properly exercised its discre-
tion to order rescission because the circuit court did not
view this topic as one involving discretion. The obvious
reason for this omission is that the parties never argued
that a discretionary decision under common law prin-
ciples was on the table. So far as my review of the
parties' arguments before the circuit court reveals, the
Otts sought rescission solely under Wis. Stat.
§ 707.57(1)(a), and solely on the theory that rescission

was theirs for the asking if they demonstrated that Peppertree violated Wis. Stat. ch. 707. Peppertree, in turn, argued only that rescission was not available under § 707.57(1)(a).

¶ 57. Thus, when the circuit court ruled in favor of the Otts, it effectively held that rescission automatically followed its finding that Peppertree violated provisions of Wis. Stat. ch. 707. The circuit court's complete ruling on this topic is short: "[T]he [Otts] under [Wis. Stat. § 707.57(1)(a) are] entitled to appropriate relief which includes rescission and that . . . is so ordered . . . ." I find nothing in the record indicating that the circuit court considered *whether* to order rescission.

¶ 58. How then does the majority avoid discussing whether ordering common law rescission is supported by the record in this case? The answer is found in paragraph 27 of the majority's decision. There, the majority explains that it is affirming rescission because "Peppertree does *not* argue in the alternative, that, even if the Otts were entitled to obtain some type of relief under § 707.57(1), the court erroneously exercised its discretion in granting the Otts the remedy of rescission on the present record." Majority, ¶ 27. I interpret this explanation to mean that the majority thinks it is also appropriate to affirm rescission under the common law principles because of Peppertree's failure to argue otherwise. But, with respect to common law rescission, this explanation ignores how the rescission issue was presented to the circuit court.

¶ 59. As is obvious by now, under my construction of the phrase "adversely affected," Peppertree's failure to argue, in the alternative, that the circuit court should have exercised discretion *whether* to order rescission under the statute is both beside the point and understandable. Since I agree with Peppertree that,

under the facts in this case, rescission is not available, the omission of the alternative argument is beside the point. But the omission is also understandable because of the close link between Peppertree's statutory-interpretation argument and the fairness of ordering rescission. When Peppertree argues that it makes no sense under the statute to say that the Otts are entitled to rescission if they have not been "adversely affected," Peppertree also effectively argues that there is no basis on which a court could properly exercise its discretion to order rescission. In other words, there is no harm to remedy with rescission.

¶ 60. More to the point here, the Otts sought rescission solely under WIS. STAT. § 707.57(1)(a), perhaps because that statute authorizes payment of their attorney fees should they prevail. Further, the Otts' statutory rescission theory was that rescission was theirs for the asking if they demonstrated a WIS. STAT. ch. 707 violation. Thus, Peppertree can hardly be blamed for failing to both raise and knock down the proposition that, apart from ch. 707, the Otts might be entitled to rescission under common law principles.

¶ 61. Moreover, it is obvious what Peppertree's response would have been; namely, that the Otts cannot show that the record supports an exercise of discretion in ordering rescission because nothing indicates that Peppertree's violations had an effect on the Otts, much less an adverse effect.

¶ 62. To sum up, the majority's common law rescission discussion raises and applies a theory for affirming the circuit court that the Otts have not advanced and that Peppertree, understandably, did not address. Under these circumstances, I would not hold that Peppertree loses because it failed to address the topic.

210

¶ 63.   Finally, I wonder whether the majority's decision amounts to a rejection of the Otts' apparent argument that rescission was theirs for the asking, without regard to whether the rescission order remedies an actual harm suffered. Parts of the decision might be read that way because they suggest that, even under the time-share statutes, rescission is an equitable remedy requiring a circuit court's exercise of discretion. But since the majority concludes that the Otts need not show harm to be entitled to rescission under the statute, then I suppose it makes sense to say that rescission under the statute is automatically triggered merely by a demonstrated violation and a request for rescission. When there is no actual harm or potential harm shown, what is there for a circuit court to balance? It seems resolution of this question awaits a case in which the parties squarely address it, something that has not been done here.

¶ 64.   For these reasons, I respectfully dissent.